# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

SHARON A. BOLTER,

    Plaintiff,

    v.                           Case No. 18-CV-1970

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

---

Sharon A. Bolter seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

Bolter filed applications for a period of disability insurance benefits and supplemental security income, alleging disability beginning on July 24, 2009. (Tr. 854–66.) Bolter later amended the alleged onset date to February 28, 2012. (Tr. 18.) Bolter's applications were denied initially and upon reconsideration. (*Id.*) Bolter filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on September 30, 2015. (Tr. 38–73.) Bolter testified at the hearing, as did John R. Reiser, a vocational expert ("VE"). (*Id.*) Bolter was represented at the hearing by a lay advocate. (*Id.*)

In a written decision issued December 24, 2015, ALJ Robert L. Bartelt found that Bolter had the severe impairments of obesity; degenerative spinal changes, with apparent radicular manifestations; and indications of carpal tunnel syndrome. (*Id.* at 21.) ALJ Bartelt further found that Bolter did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 21–22.) ALJ Bartelt found that Bolter had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: changes in position (sit/stand) at thirty-minute intervals, and no more than frequent (as opposed to constant) handling or fingering. (Tr. 23.) ALJ Bartelt found that Bolter was capable of performing relevant work she has done in the past, specifically in accounting and collections. ALJ Bartelt thus concluded that Bolter was not disabled from the alleged onset date until the date of the decision. (Tr. 24.) ALJ Bartelt's decision became the Commissioner's final decision when the Appeals Council denied Bolter's request for review. (Tr. 2–4.)

Bolter appealed to the U.S. District Court for the Eastern District of Wisconsin, which reversed and remanded pursuant to a stipulation of the parties on May 10, 2017. (Tr. 713–18.) The Appeals Council remanded the case to an ALJ, identifying issues with ALJ Bartelt's decision including a deficient listings analysis and deficient evaluation of the opinion evidence. (Tr. 721–26.) The Appeals Council instructed the ALJ on remand to:

- Evaluate the severity of the claimant's obesity and its effects pursuant to Social Security Ruling 02-1p.
- Reevaluate whether the claimant's impairments meet or equal the listings, in particular Listing 1.04.
- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the medical opinion evidence

2

pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence.

- Further, if necessary, obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's physical impairments (20 CFR 404.1513a(b)(2) and 416.913a(b)(2)).

- Further evaluate the claimant's alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529 and 416.929)

- Further determine whether the claimant could perform the physical and mental demands of her past relevant work as she actually performed this work or as generally performed in the national economy.

(Tr. 724–25.)

On remand, ALJ Jeffry Gauthier ("the ALJ") held a hearing on February 28, 2018 (Tr. 618–82) and issued a written decision on April 19, 2018. (Tr. 592–608.) The ALJ found that Bolter had the severe impairments of spine disorders, neuropathy, obesity, and asthma. (Tr. 595–96.) The ALJ found that Bolter also had a number of non-severe impairments, including but not limited to status post ovarian cancer, hypertension, mild carpal tunnel syndrome, headaches, urinary frequency/incontinence, and status post knee arthroscopy. (*Id.*) The ALJ further found that Bolter did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 596–97.) The ALJ found that Bolter had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; never work at unprotected heights or around moving mechanical parts; and never have exposure to concentrated amounts of dust, odors, fumes, and/or pulmonary irritants. (Tr. 597.) The ALJ found that Bolter was capable of performing her past relevant work as a collections clerk, accounting clerk, and data entry clerk. (Tr. 607.) The ALJ thus concluded that Bolter was not disabled from the alleged onset date until the

3

date of the decision. (Tr. 608.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Bolter's request for review. (Tr. 583–88.)

## DISCUSSION

### *1.    Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## 2.    *Application to this Case*

Bolter argues that the ALJ applied the incorrect legal standards and failed to support his decision with substantial evidence for five reasons: (1) the ALJ excluded Bolton's use of a cane or walker from the RFC and hypotheticals to the VE, (2) the ALJ erred in evaluating Bolter's subjective symptoms, (3) the ALJ erred in the weight given to treating source opinions, (4) the ALJ improperly interpreted the recent medical evidence instead of relying on a medical expert, (5) and the ALJ erred in determining that Bolter could perform her past relevant work. (Pl.'s Br., Docket # 15.) I will address each in turn.

### 2.1    Totality of Limitations

Bolter argues that the ALJ impermissibly failed to include a limitation for use of a cane or walker in the RFC assessment or in the hypotheticals presented to the VE. (Pl.'s Br. at 2–4.) As a general rule, both the ALJ's RFC assessment and the hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record. SSR 96–5p, 1996 WL 374183, at *5 (RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence"); 20 C.F.R. § 404.1545(a)(1); *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)); *Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record.").

An ALJ must include use of a cane or other hand-held assistive device in the RFC if the ALJ finds that it is medically necessary. *See Tripp v. Astrue*, 489 F. App'x 951, 655 (7th Cir. 2012). A finding of medical necessity must rest on "medical documentation establishing

the need for a hand-held assistive device to aid in walking and standing, and describing the circumstances for which it is needed." SSR 96–9p; *see also Tripp*, 489 F. App'x at 655. The Seventh Circuit has suggested that a finding of medical necessity requires an "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary." *Id.* (citing *Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) (non-precedential decision) (provision of cane to claimant by Veterans Administration medical service at physician's request did not satisfy medical necessity standard); *Staples v. Astrue*, 329 F. App'x 189, 191–92 (10th Cir. 2009) (non-precedential decision) (doctor's statement that claimant "uses a cane to walk" did not establish medical necessity); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (doctor's reference to "script" for cane and checking box on printed form corresponding to statement that "hand-held assistive device medically required for ambulation" was insufficient to establish medical necessity)). References in the record to use of such devices are not sufficient to establish medical necessity if they are traceable to self-reports and physicians' observations that the claimant presented with such a device. *Id.* Even a physician's statement that a claimant "needs" such a device may not establish medical necessity if it is unclear whether this was the doctor's medical opinion or merely a restatement of what was told to him. *Id.*

Here, the ALJ noted various indications in the record that Bolter needed a cane or walker: Bolter's self-reported use of a cane or walker for ambulation (Tr. 599 (citing Exs. 37F/62, 38F/62)); treatment records noting ambulation with a walker (*id.* (citing Exs. 38F/64, 37F/67–68)); a consultative examiner's note that Bolter used a four-point walker (Tr. 601 (citing Ex. 29F)); treating nurse practitioner Laurie Whorley's assessment that Bolter required use of a cane or other assistive device while engaging in occasional standing or

walking (Tr. 604 (citing Exs. 32F, 34F)); treating physician George Schneider's observation that Bolter uses a walker and his opinion that Bolter could not carry items without using a walker (Tr. 605–06 (citing Ex. 14F)); and a chiropractor's letter stating that Bolter had been instructed to use a cane to assist with balance and coordination during ambulation and that it was medically necessary for her to use a cane while visiting her son to prevent falls or injuries (Tr. 606 (Ex. 27F/2)).

Despite the evidence he cited supporting Bolter's need for a cane or walker, the ALJ did not find a hand-held assistive device medically necessary. The ALJ rejected Bolter's self-report and Whorley's opinion because of notes in Whorley's treatment records documenting a "normal" or "easy" gait, normal station, and full range of motion. (Tr. 602, 604 (citing Exs. 25F/16; 28F/3; 38F/6, 16), 605 (citing Exs. 25F/16, 39, 41–44; 28F/3; 38F/6, 16).) The ALJ also explained that he found the treating physician's statement and the chiropractor's statement ambiguous about whether and to what extent an assistive device was medically necessary (Tr. 606 (citing Ex. 14F), 607 (citing Ex. 27F/2)).

The ALJ failed to support his conclusion that use of a cane or walker was not medically necessary with substantial evidence. First, the ALJ justified rejecting significant evidence of the need for such a device on the basis of highly suspicious treatment notes documenting a normal gait and station. (Tr. 602, 604 (citing Exs. 25F/16; 28F/3; 38F/6, 16), 605 (citing Exs. 25F/16, 39, 41–44; 28F/3; 38F/6, 16).) The cited records are from a single provider, Laurie Whorley, APNP, and the language about a normal gait and station is part of a set of findings that is repeated verbatim in many of Whorley's electronic notes, even when the note also documents clear abnormalities. For example, when Whorley was treating Bolter for complaints of (among other symptoms) shooting pain in her legs and pulsating in her left

knee, Whorley noted that Bolter was using two canes to ambulate and had an "antalgic gait with canes." (Tr. 1007–09.) Yet the language about a normal gait and station remained in that note. Supporting the unreliability of these notes is Bolter's hearing testimony. The ALJ asked Bolter about one such note and Bolter testified that she did not understand it because she had her walker with her and was using it at that visit, and specified that when she got off the walker to sit up on the table she used a cane and the doctor was concerned about her getting to the table. (Tr. 651–52.)

Further casting doubt on the reliability of the evidence is its inconsistency with voluminous evidence that Bolter did *not* have a normal gait and station. As early as 2011, Bolter was noted walking with a cane at two emergency room visits and assessed to have a steady gait *with her cane*. (Tr. 323, 237, 333, 347, 348.) In 2012, Bolter's primary care provider indicated that she "ambulates slowly." (Tr. 392) In 2013, the consultative examiner noted that Bolter tended to drag her right foot when she walked, and had difficulty doing right foot dorsiflexion, positive left straight leg raise, guarded hip motions, decreased sensation in the left lateral toes and lateral leg, and decreased left hamstring reflex. (Tr. 419–20.) Treatment notes from 2013 also show Bolter ambulating with a cane (Tr. 425, 448), and her primary care provider noted that Bolter had leg weakness and poor balance and "can't walk any distance without stopping to rest." (Tr. 476.) In 2015, Bolter's chiropractor indicated that she used a cane "in order to help stabilize her balance and coordination" and that it was medically necessary for her to use a cane at least in some circumstances to prevent falls or injuries. (Tr. 1066.) In 2016, Whorley noted that Bolter was using two canes to ambulate and had an antalgic gait with canes. (Tr. 1007, 1009.)

The records from 2017 are replete with indications of gait and station abnormalities. The consultative orthopedic examiner noted that her "gait and station are very slow" and indicated that she "clearly" had pain at the lower left extremity and into the hip. (Tr. 1107.) Whorley noted Bolter's "slow gait with walker- noted dragging of left foot intermittently" as well as diminished strength in the hips, legs, and feet and the absence of a patellar reflex. (Tr. 1296.) Bolter reported to her OB/Gyn that she had had several falls recently. (Tr. 1217.) Neurologist Joav Kofman examined Bolter and indicated that she had an "antalgic quality to her gait." (Tr. 1226.) Bolter reported to her physical therapist that, with difficulty and pain, she could ambulate for ten minutes in a store holding on to the cart or her walker. (Tr. 1381, 1452.) She also reported that she had tried walking with her cane but felt unbalanced and wobbly, though she was able to use it to get into a store where she could then use a cart. (Tr. 1434.)

Additionally, Bolter's physical therapists, who treated Bolter dozens of times from 2016 to 2018—the same time frame as Whorley's notes documenting supposedly normal gait and station—repeatedly noted gait and station problems including Bolter's "significant" need for upper extremity assistance. (Tr. 1474.) Throughout Bolter's physical therapy treatment, notes document that she received upper-extremity assistance during standing exercises (Tr. 1081, 1083, 1084, 1087, 1088, 1090, 1312, 1319, 1337, 1369, 1389, 1400, 1406, 1418, 1428–29, 1440, 1447, 1453, 1464, 1474, 1480, 1485), which the physical therapist described as "require[d]" (Tr. 1474). In 2016, one physical therapist wrote that Bolter had "definite weakness on the left side that needs to be addressed. She also demonstrates balance deficits that should be addressed to prevent falls." (Tr. 1083.) One of Bolter's treatment goals in October 2016, listed as "Not Met," was to "be able to walk > 10 minutes with single point

cane with < 5/10 pain for household and community mobility." (Tr. 1090.) In 2017, the therapist reported that Bolter "demonstrates decreased balance which may be due to neuropathy of feet and significant weakness of lower extremities" (Tr. 1308), assessed "decreased balance abilities when performing standing exercises" (Tr. 1331), noted that Bolter required maximum bilateral upper extremity assist in standing hip flexion (Tr. 1319), and observed "decreased balance[ ] abilities" (Tr. 1337) and "significant weakness in hip/knee/core musculature" (Tr. 1353). At the end of 2017, the therapist stated that Bolter's "[c]ontinued impairments include decreased left > right LE strength, balance, gait, flexibility, ROM; these limit her ability to function in her home and in the community. She does also have significant left anterior tibialis weakness . . . ." (Tr. 1502.) In 2018, the therapist noted that Bolter demonstrated difficulty clearing her left foot during her gait (Tr. 1496, 1499), and suggested that Bolter might benefit from an ankle-foot orthosis (AFO) (Tr. 1499). The last note in the record states that Bolter

> [c]ontinues to have significant impairments . . . in left sided weakness in the LE that limit function. Continued impairments include left > right glut, hip flexor, quad, hamstring, anterior tib weakness, decreased LE A/PROM, decreased LE flexibility, decreased balance, pain and decreased endurance. These limit her ability to sit > 30 min, stand with support for > 15 min, ambulate for > 15-20 Min with UE assist, ambulate without AD, increase fall risk.

(Tr. 1489.)

In the face of significant evidence of Bolter's long-term gait abnormalities, and therefore the unreliability of the handful of records documenting a normal gait and station, the ALJ erred in failing to explain why he credited those records to discount Bolter's need for a cane or walker. Even if the records were trustworthy, the ALJ does not explain why this relatively sparse evidence outweighs extensive evidence to the contrary.

Additionally, the ALJ erred in rejecting Bolter's need for a cane or walker on the basis that the treating providers' statements were ambiguous about whether and to what extent an assistive device was medically necessary. Dr. Schneider's statements that Bolter "uses cane to maintain balance" and "uses cane" are indeed ambiguous in that respect. (Tr. 479, 480.) But his statement that Bolter "[c]an't carry without using walker" unambiguously states that a walker is required for carrying; it does not permit an interpretation that Bolter merely elects to use one. (Tr. 1066.) Furthermore, ambiguous statements are not evidence that Bolter does *not* need a cane or walker, so to the extent the ALJ used such ambiguities to discount evidence that Bolter needed a cane or walker, this was error.

In sum, a reasonable mind evaluating the entire record would not accept as "substantial" the ALJ's stated reasons for rejecting Bolter's need for a cane or walker. The decision will be reversed and the case remanded for proper evaluation of Bolter's need for such a device.

### 2.2   Evaluation of Subjective Symptoms

Relatedly, Bolter argues that the ALJ failed to properly evaluate her reported symptoms. (Pl.'s Br. at 11–27.) Because the case is being remanded on other grounds, I need not address this argument at length. I comment briefly to provide guidance to the ALJ on remand, as I agree that the ALJ erroneously discounted Bolter's alleged pain and difficulties with ambulation/need for a hand-held assistive device.

The Commissioner's regulations set forth a two-step test for evaluating a claimant's statements regarding her symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, if the claimant has such an impairment,

the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If the alleged limitations are not substantiated by the medical signs and laboratory findings of record, the ALJ considers whether the statements are consistent with the record of as a whole considering a variety of factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.*

A court's review of a credibility, or consistency, determination is "extremely deferential." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). On judicial review, courts "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Id.* at 413–14 (internal quotation marks and citations omitted).

In her Adult Function Reports, Bolter indicated that she used a cane, walker, or wheelchair daily. (Tr. 246, 292, 908.) She explained that the cane was prescribed after a fall in 2006 as she started to have trouble walking, and the doctor also told her to use a walker or wheelchair as needed. (Tr. 292.) She states that she goes from the cane to the walker to the wheelchair as required to function due to nerve pain. (*Id.*) She stated that she was also prescribed a knee brace because of numbness and to avoid injury. (*Id.*)

At her hearing on remand in 2018, Bolter testified that she had sciatica and nerve damage that caused spasms, a burning sensation, tingling, and numbness in her legs and feet, predominantly on the left side. (Tr. 633–34.) She described her pain as intermittent after it began in 2006 but progressing to daily since 2013. (Tr. 634.) She indicated that she had a foot drop on the left side due to a neurological impairment that had caused her to trip and fall many times, and it was very difficult to get up and start walking. (Tr. 641.) Bolter explained that she had used a cane and occasionally a walker since 2006. (Tr. 642.) She testified that due to deterioration in her back the condition had worsened over time; at the time of hearing she had such difficulty walking that she used a walker all the time. (Tr. 641, 643.) She testified that when she went shopping she used a scooter that her son retrieved and brought to the car for her, or would "very rarely" walk leaning on the cart. (Tr. 649.)

In his decision, the ALJ noted Bolter's testimony that she had difficulty walking and dragged her left foot. (Tr. 598.) He also noted her reports in the medical records of ongoing symptoms including that the left leg felt heavy and hard to lift; she dragged her left foot at times; gait abnormality, frequent falls, and balance problems; numbness and tingling in the lower extremities; and use of a cane or walker for ambulation. (Tr. 598–99.) Although the ALJ found that Bolter's medically determinable impairments could reasonably be expected to cause her alleged symptoms, he found that Bolter's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 598, 602.) The ALJ stated:

> Although some records stated that she had significant abnormalities such as an antalgic gait with the use of a walker, other progress notes frequently documented a normal gait, normal station, and full range of motion in the extremities. Her spine disorders and neuropathy were treated with fairly conservative measures including chiropractic care, physical therapy, and medications. She reported reduced symptoms with chiropractic care. The

13

physical therapy records stated that she made gradual improvements, including an improved gait. Other progress notes showed that medication was helpful in reducing her symptoms of pain.

(Tr. 602.)

The ALJ's finding of inconsistency between Bolter's alleged symptoms and the record is patently wrong and requires remand. First, as explained above, the ALJ fails to build a logical bridge between the highly problematic notes documenting a normal gait, normal station, and full range of motion in the extremities and his conclusion that Bolter exaggerated her difficulties with ambulation and need for an assistive device. Additionally, the ALJ's conclusion that Bolter exaggerated her symptoms because her treatment was "fairly conservative" and resulted in some improvement is also patently wrong. There is no indication in the record that any more aggressive treatments were available for Bolter's nerve pain or difficulties ambulating, so there is no logic to the conclusion that Bolter's failure to obtain more aggressive treatment indicates that her symptoms were not as severe as alleged. Furthermore, the fact that Bolter's records indicate some improvement or relief from symptoms does not mean that Bolter no longer experienced severe pain or difficulties with ambulation or no longer needed an assistive device. Improved symptoms may still be severe. *See Johnson v. Colvin*, No. 15 C 9737, 2017 WL 219514, at *5 (N.D. Ill. Jan. 19, 2017) (in order to use response to treatment as a basis for discounting symptoms, "the ALJ must connect how his improvement restored Plaintiff's ability to work"); *Salazar v. Colvin*, No. 13 C 9230, 2015 WL 6165142, at *4 (N.D. Ill. Oct. 20, 2015) (functional limitations may remain even after improvement). In this case, the notes indicating improvement are interspersed with notes indicating significant ongoing symptoms.

14

In sum, the bulk of the evidence the ALJ cites to justify discounting Bolter's allegations is not inconsistent with severe pain and difficulties with ambulation/need for a cane or walker. Because the ALJ's discounting of Bolter's symptoms led to failure to include relevant limitations in the RFC, this was reversible error.

### 2.3    Evaluation of Medical Opinion Evidence

As this case is being remanded on other grounds, I comment only briefly on Bolter's argument that the ALJ erred in the evaluating the medical opinion evidence (Pl.'s Br. at 27–32.)

An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(c)(2).[1] If the opinion of a treating source is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, the opinion is given "controlling weight." *Id.* Even if the ALJ finds that the opinion is not entitled to controlling weight, he may not simply reject it. SSR 96-2p. Rather, if the ALJ finds that a treating source opinion does not meet the standard for controlling weight, he must evaluate the opinion's weight by considering a variety of factors, including the length, nature, and extent of the claimant and physician's treatment relationship; the degree to which the opinion is supported by the

---

[1] On January 18, 2017, the SSA published the final rules entitled "Revisions to Rules Regarding the Evaluation of Medical Evidence" in the Federal Register (82 FR 5844). The final rules became effective on March 27, 2017. For claims filed before March 27, 2017, however, the SSA continues to apply the prior rules. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply.").

evidence; the opinion's consistency with the record as a whole; and whether the doctor is a specialist. 20 C.F.R. § 404.1527(c).

The ALJ must always give good reasons for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. The ALJ must give reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. An ALJ can reject a treating physician's opinion only for reasons supported by substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

Bolter's treating nurse practitioner, APNP Whorley, opined that Bolter required the use of a cane or other assistive device while engaging in occasional standing or walking. (Tr. 1132, 1136.) The ALJ gave Whorley's opinion little weight because she was not a specialist, completed a checklist-style questionnaire that allegedly did not provide thorough explanations, and her progress notes "mostly revealed good function including an easy normal gait, normal station, and full range of motion in the extremities." (Tr. 605 (citing Exs. 25F/16, 39, 41–44; 28F/3; 38F/6, 16).) None of these reasons justifies the ALJ's rejection of Whorley's opinion. Although Whorley was a primary care provider and not a specialist, it is unclear why a specialist would have been needed to identify Bolter's medical need for an assistive device in these circumstances; Whorley had a long-term treating relationship with Bolter and had observed her to have an abnormal gait on examination, including when using canes to ambulate. (Tr. 1009, 1296.) While Whorley's questionnaires do check a box indicating Bolter's need for a cane, it is unclear why a more thorough explanation was needed; Whorley wrote on the questionnaire that Bolter had objectively identified degenerative changes and neuropathy, suffered chronic pain and neuropathy/nerve damage, and

experienced weakness of the bilateral lower extremities. (Tr. 1131–33, 1135–37.) As for Whorley's notes indicating "normal gait, normal station, and a full range of motion in the extremities," this language is suspicious for the reasons indicated above. On remand, the ALJ must appropriately evaluate Whorley's statements.

Although Bolter does not argue this point, the ALJ also apparently gave no weight to the statement from the consulting orthopedic examiner, Dr. Kurt Reintjes, because he "did not offer an opinion about the claimant's work capacity." (Tr. 607.) In fact, Dr. Reintjes did make a statement about Bolter's need for the four-point walker she presented with, but his opinion is indecipherable. Dr. Reintjes observed that Bolter "appears significantly in distress and in a significant amount of pain and uses a four-point walker to come in, it is typical to correlate her need for the walker with the subjective findings based on this exam today" and also, "Gait and station are severely slow and dependent upon four-point walker, which used to be difficult correlating these findings with her reported need for a walker." (Tr. 1107.) It is entirely unclear what this means. Did Dr. Reintjes believe that a walker was medically necessary or not? If the opinion of the consulting examiner was useless, the ALJ should have contacted the consulting examiner for clarification or obtained a new consultative exam.[2]

### 2.4    Interpreting the Medical Evidence

Bolter faults the ALJ for relying on his own interpretation of the medical evidence in the absence of any State Agency reviewing physicians' opinions covering the latest medical records. (Pl.'s Br. at 4–11.) Because the case is being reversed on other grounds, I will

---

[2] Dr. Reintjes' examination itself appears to have been problematic, not just his statement. Bolter testified that she could not get up on Dr. Reintjes' examination table, which was at her chest height, so he gave her only a cursory examination. (Tr. 650–54.) Dr. Reintjes' brief opinion supports this assertion.

comment only briefly to provide guidance on remand, as I agree that a new opinion should have been obtained.

An ALJ may not insert his own interpretation of new medical records where that of a qualified medical expert is needed. *See Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) ("[A]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.") (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny)); *Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) (ALJ wrongly "played doctor" by concluding without an expert opinion that recent MRI results were consistent with the stage agency physician's earlier assessment). However, not all medical developments or new records require a new expert assessment. *Alsteen v. Berryhill*, No. 17-CV-1060, 2018 WL 4590008, *3 (E.D. Wis., Sept. 24, 2018) ("If the rule were that all new records required further review by the state agency consultants, the ALJ would be required to obtain supplemental opinions in every case. That would obviously be impractical."). *Moreno* and the other cases suggest that even significant new records may not require a new expert assessment if they would not have changed the original assessment. *Id.* The ALJ must seek an updated medical opinion rather than interpreting the records himself only when significant subsequent events occur in the medical treatment after the review that could reasonably have changed the state agency physician's earlier assessment. *Id. See also Reimer v. Berryhill*, No. 17-CV-1425, 2018 WL 4635673 (E.D. Wis., Sept. 27, 2018).

In this case, the last State Agency reviewing physician's opinion was Dr. George Walcott's opinion of January 2017. (Tr. 728–40.) Later in 2017, Bolter experienced notable developments in her conditions and treatment. She was treated for shortness of breath/asthma after exposure to a household cleaning product. (Tr. 1253–63.) She underwent surgery for ovarian cancer. (Tr. 1110–29, 1149–56, 1160–1216.) She had an abdominal CT scan and a chest x-ray (Tr. 1264–88), and also appears to have had a spine MRI showing multilevel degenerative disc disease. (Tr. 1305.) In July and August of 2017 Bolter reported increased loss of balance and several falls. (Tr. 1217, 1220,1222, 1330, 1331.) She consulted a neurologist for her frequent falls, gait and balance abnormalities, and numbness and tingling in the extremities; he referred her to another neurologist for further consultation and evaluation. (Tr. 1220–21.) The new neurologist assessed decreased sensation in upper and lower bilateral extremities and ordered an EMG/NCV procedure. (Tr. 1222–27.) The neurologist found the results of the EMG/NCV procedure consistent with sensory neuropathy affecting both lower extremities and mild bilateral carpal tunnel syndrome. (Tr. 1231.) The neurologist started Bolter on Gabapentin for neuropathic pain and stated that it was likely a hereditary sensory neuropathy. (Tr. 1232.) Throughout 2017 and into 2018, records document extensive physical therapy assessments with detailed findings and ongoing treatment for continued significant impairments including lower back pain, decreased balance, and weakness of the lower extremities. (Tr. 1302–1504.)

These records reasonably could have changed Dr. Walcott's opinion that Bolter could perform sedentary work with some postural limitations as well as limitations on concentrated exposure to pulmonary irritants and hazards; therefore, the failure to procure an updated opinion from a physician was error. Furthermore, the error was not harmless, as the ALJ gave

great weight to Dr. Walcott's opinion about many of these limitations. (Tr. 603–04.) On remand, the ALJ should obtain an updated medical opinion.

### 2.5    Step Four Analysis

Bolter argues that the ALJ erred at Step Four in determining that Bolter could perform her past relevant work. (Pl.'s Br. at 32–34.) Because the case is being remanded on other grounds and Bolter's RFC may well change, I will not address this argument here.

## CONCLUSION

The ALJ failed to support his conclusion that Bolter did not need a cane or walker with substantial evidence. The ALJ also improperly discounted Bolter's alleged symptoms and the opinions of her provider. Accordingly, the Commissioner's decision will be reversed and remanded. On remand, the ALJ should obtain an updated State Agency physician opinion.

Although Bolter requests that this court award benefits (Pl.'s Br. at 34–35), an award of benefits is appropriate only "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). Here, there are unresolved issues and this is not a case where the "record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Therefore, the case is appropriate for remand pursuant to 42 U.S.C. § 405(g), sentence four.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 4th day of February, 2020.

BY THE COURT

_s/Nancy Joseph_
NANCY JOSEPH
United States Magistrate Judge